This is case number 4140352, International Union of Operating Engineers v. Illinois Labor Relations Board for the appellate Michael O'Hara for the appellate Paul Rossett. Mr. O'Hara. May it please the court, counsel. I'm going to ask the indulgence of this court to let me deviate from the manner in which to present an argument today. I'm going to hope that my comments are not taken out of context. How much deviation are you speaking about? Quite a bit. We'll monitor it. Go ahead, please. And let me indicate, should I deviate too much, just interrupt me, I'll sit down, and I won't say another word. This has been the most disappointing case of my legal career. In three months, the two collective bargaining agreements that have a term of three years will be expired. In less than three months, I'll be 63 years of age. I've practiced law for 37 years. 99% of that has been labor law. And I know quite a bit about administrative law. I've served as hearing officer for three different administrative judicial proceedings for 10 years as contractual attorney. And I've appeared before most administrative bodies that this state has. One issue, one issue confronted the circuit court back in April of 2000, I'm sorry, May, I guess, of 2013. The effective date of a statutory amendment. The Illinois Supreme Court issued three decisions in nine years. The Armstead case, the Commonwealth Edison case, and the Kaveny case. Now, if any of the justices want the citation for those cases, I'll be happy to provide them. They're up here. It may take a second for me to remember them, but they're here. No one can read the Foster-Wheeler energy case. The 2004 decision was made by the Second District with Justice Byrne and reconciled that decision to what the Illinois Labor Relations Board did to me and my client. This can't be done. In that case, New York contractors enforced a construction contract for profitability. And an Illinois subcontractor filed a mechanics lien. And within that particular construction contract, there was a form choice and a law choice. And during the term of that construction contract, the Illinois legislature passed the Illinois Building and Construction Contract Act and made illegal form choice and choice of law in construction contracts. Not only did it say that it was void, but said those provisions were unenforceable. And those provisions weren't enforced until after the act was enacted. This case that we have here is quite simple, uneventful, and it's inconceivable that a court could possibly go past the first step of a land-grant decision. Those aren't my words. Those are the Illinois Supreme Court words. There is nothing within the statutory amendment that indicated that that was to go into effect immediately. None. But let me indicate something, Justice Steinman, because I want to make sure that I don't want to be disrespectful. I want to indicate what I'm saying. My grandfather was a circuit court judge and an appellate court judge. He sat on this bench. He taught me the respect for the law. And when an administrative body is handed the decision over a purely legal issue and destroys the legal remedy of 45 people that are public services administrators, a valid contract under the guise of a unit clarification petition, it's wrong. Now I hasten to ask... Isn't this a question of statutory intent? It is, and let me indicate. The legislature would be empowered to terminate the union representation of these people in the comptroller's office as of the effective date of the statute, would they not? Any time it warranted. Okay. The reason I ask that is the legislature has in other instances made clear about its intent to let the collective bargaining agreements continue, but in this instance that language isn't present. For instance, section 15B says, quoting, any collective bargaining agreement entered into prior to the effective date of this act shall remain in full force during its duration. I'm not familiar with that. That's the argument you're making to us here, isn't it? No. Aren't you arguing that it shall remain in full force? Yes, but it's a wholly different... Well... Excuse me. It's a totally different analysis. I understand, but I want to be clear here. It is your position that notwithstanding this new statute that the collective bargaining agreement should remain in full force in effect, and my question, since we're looking to what the legislature has said and their intent, if you're right that they intended this, why didn't they say it with regard to these folks as they said it in other areas? Why shouldn't we conclude that the absence of the legislature having used these same words means that the legislature intended a different result? I don't want to be flippant, but you're required to. That's why. Well, I don't mind you being flippant, but I don't understand your response. Let me explain. Okay. If the legislature intended to do so, according to the Illinois Supreme Court in Kaveny, and let me indicate that's 207 Illinois 2nd 82, a 1996 case that has been on the books almost for 20 years, it says that the legislature has to clearly and unequivocally indicate the effective date of the statutory amendment. Otherwise, Section 4 of the Statute on Statutes, which is 70 Illinois Compiled Statutes, I'm sorry, 5 Illinois Compiled Statutes, 70 Section 1, requires the court to apply Section 4 so that it is not a retroactive effect because if it's substantive, and only apply it retroactively, it's procedural. By the way, the legal counsel at the Illinois Labor Relations Board made the same argument and asked me the same question, and I answered it this way. The analysis is topsy-turvy. If, indeed, the Illinois legislature intended it to be, in fact, to terminate the contracts, it was required to specifically state so in the statute. Failure to do so requires the court to apply the Illinois Supreme Court analysis, and in turn, the Landgraf analysis, to the statutory provision. Again, I don't want to be flippant about this, but nobody can read Foster Wheeler's case and reconcile the decision of the Illinois Labor Relations Board with existing law. When I went to law school, the United States Supreme Court decisions and the Illinois Supreme Court decisions were the law of the land and the state. When the Illinois Supreme Court decides three different cases in less than nine years and unequivocally indicates the manner and methodology by which to analyze this simple issue, straightforward issue, uneventful issue, then the administrative bodies are required to follow. Now, Justice Steigman, I know you're going to get angry at me, but I'm going to go ahead and indicate that the companion case when you indicated that you may be old and slow. Me too. You remember that comment. I'm going to indicate to the court that that decision was wrong when it was made, and it's wrong today. And I'll tell you why. I could convince you in five minutes of why it was wrong. If you look on page 34 and 41 of the record, I didn't file a declaratory judgment action. I filed a petition to compel arbitration. And within my grievance, that's on page 69 and 71. On page 70 of the record, you'll see that I indicated that my grievance doesn't depend on when this statutory amendment goes into effect. It didn't matter whether it was self-effectuating on April 5, 2013. It didn't matter whether you had to wait for a unit clarification for the Illinois Labor Relations Board for April 8, 2014. And it didn't matter whether you waited until the end of the collective bargaining agreement. I indicated that it was a violation of the collective bargaining agreement no matter when that statutory effect took place. I had a collective bargaining agreement that was breached because of the covenant of good faith and fair dealing. Comptroller helped pass legislation that gutted a collective bargaining agreement that they negotiated pursuant to public policy. And the only issue before the Illinois Circuit Court was whether indeed there was a collective bargaining agreement that potentially covered that. And by the way, I cited three or four different sections of the contract that were applicable. When I went to court, as you'll recall, Justice Steinman, a 2615 motion was erroneously cited by the Attorney General's office. I specifically and unequivocally in my response said it's not a 2615. It should be denied. Despite that, the Circuit Court dismissed my case but said you can plead over in violation of 2615 and said I'm not sure what this is all about, but I want to decide the issue on the purely legal issue. I said you don't have to, but can I do that? I said yeah, you can do it by the declaratory judgment action because you have discretion to do so. And you'll look at the docket and it says you amend it and I'll decide the merits. And then he dismissed it without a motion to dismiss. So my client was deprived of a grievance and a prompt arbitration, and now we're here three months from the expiration of the collective bargaining agreement where there's no doubt about these PSAs no longer being public employees. By the way, a unit clarification, judges? Justices, a unit clarification? There's no doubt, never has been, about the meaning of this statutory amendment. The PSAs are out. You don't need an administrative body to tell you that. You don't need a unit clarification. By the way, just as an aside, the administrative law judge who decided this was out of law school less than the term of the collective bargaining agreement, less than three years. One legal issue. He was supposed to decide this issue, supposed to conduct an investigation, supposed to conduct a hearing, and supposed to issue a decision within 120 days. One issue. Didn't conduct an investigation, didn't hold a hearing, and didn't decide it within 120 days. Didn't decide the one issue I raised. Never contacted the union. Filed a petition to intervene. As I indicated in my last argument, privately due process, because I filed a petition to intervene, because the comptroller's office said this was self-effectuated without any precedent at all. So I filed a petition to intervene to make sure that if the Illinois Labor Relations Board said, we can do this sui sponte, I want to intervene. But if they said you had to have a unit clarification, I wanted to be there as the union representative of these people. The ALJ, he decided he didn't need to rule on that. And believe it or not, after I filed a 39-page exception, the Illinois Labor Relations Board affirmed in total the ALJ's decision. Imagine that. Evidently, the ALJ, and here I am being sarcastic. Tell us what you make it sound like if you make an argument that's irrefutable. Let me indicate. I would ask you, Justice, to read my reply brief. I am so frustrated. I have read your reply brief. I want you to tone it down just a bit. I didn't say you had to sit it down. I asked you to, and I appreciate that. Thank you. My vehemence and my adversarial stance gets in the way sometimes, and I apologize. You said there's no way to read Foster Wheeler. That's right. Consistent with what was done here. Wasn't Foster Wheeler, didn't it involve a contract? Not only involved a contract, I would indicate that the decision of the Illinois Labor Relations Board that I have cited in my initial pleading, indicating that this is the correct way to do it, in the Illinois Board of Trustees, University of Chicago case, where the Illinois Labor Relations Board adopted the analysis in Landgraf and Commonwealth Edison, cited Foster Wheeler favorably. This Illinois Labor Relations Board indicated they didn't have to look at my cases, didn't have to decide my cases. Getting back to Foster Wheeler. Sure. Didn't that court hold that we're not going to go back in time and change a contract that was, no? Yes, that's correct. And we're not going to change a contract that was negotiated between these two parties. That's correct. Therefore, they had picked New York as the forum. That's correct. Correct? That's correct. Okay, well, why does that necessarily apply to what we have here? Who was a part of the contract in this case? Comptroller and the operating engineers. And that contract was signed on April 4th. It was negotiated over nine months and signed April 4th, 2013. And that contract is still in effect, is it not? No. Why not? Because they took the PSAs out and indicated that they're applying it retroactively to take it. Were the PSAs part of the contract? Yes. They signed off on it? We're the certified exclusive bargaining representative of those entities. That wasn't my question. Did they sign the contract? Of course they didn't sign it. They weren't really a part of the contract. They were just included in the union at the time the contract was formed, correct? Yes, that's correct. Okay, go ahead. Well, let me indicate something, if I could. Foster Wheeler involved a statutory provision that trumped the common law. The contract that was between the operating engineers and the Comptroller's office had the sanctity of a contract on it because we, pursuant to a vote, were the certified exclusive bargaining representative of those individuals. But I would also indicate it's not just the sacrosanct of a contract that is at issue. When that collective bargaining agreement was negotiated and signed, it had the force of affirmative public state policy. Unlike the common law that was applied in Foster Wheeler. Now, I realize that I've alienated you. I get it. I don't look like an attorney, and sometimes I don't act like one. I'm vehement about my union clients. I believe in them. I'm a unionist. I'm not a spokesman for them. I'm a proponent of them. I believe in them. There's a lot of problems. There's a lot of problems with public employee unions. There's a lot of problems with private sector unions. But they serve a legitimate purpose and they gut a collective bargaining agreement that defines the terms and conditions of employment and tell a certified exclusive bargaining representative unilaterally that they can't come into the place and represent these people and file grievances. We're not going to even recognize you. He is dead wrong. All right, Counselor. You're out of time, but you will have rebuttal. Thank you. Mr. Resett. Good morning, Your Honors. May it please the Court, Counsel. My name is Paul Resett. I'm an Assistant Attorney General for the State of Illinois, and I represent both the Illinois Labor Relations Board and the Office of the Comptroller in this direct administrative review action. The Board correctly rejected the union's contention that amended Section 3N could not apply until the expiration of the existing collective bargaining agreements in June of 2015. This is so because excluding the PSAs from collective bargaining going forward from April 5, 2013, constitutes an appropriate prospect of application of the amendment, not a retroactive one. In performing the prospect of retroactive analysis, Illinois courts have a test where they look to first see whether the General Assembly has explicitly said what the temporal reach of the amendment or the statute is. Here, the General Assembly did not explicitly set out what the temporal reach is. It says only that this act takes effect upon becoming law. In this case, this Court in Ringo, Apartments, and other courts as well have said that that sort of language is not specific enough to set out what the temporal reach is. So therefore, if the first step does not answer the question about what the temporal reach should be, under the later cases after Commonwealth, Edison, Kaveny, and its progeny, the Court looks to whether the amendment is substantive or procedural in nature and by doing so looks at Section 4 of the Statute on Statutes. And the test is that if it's a procedural amendment, it can be applied retroactively, but if it's a substantive one, it cannot. And here we do agree that amended Section 3N is a substantive amendment, so therefore it can't be applied retroactively. It's substantive because before the enactment of the amendment, the PSAs that work for the comptroller were public employees for purposes of the act, but after the amendment they are no longer public employees for purposes of the act. However, as the Board concluded below, this isn't a retroactive application here because it's only being applied going forward from April 5, 2013 on. It doesn't attempt to try to reach back and undo things that occurred when the PSAs were still part of collective bargaining and subject to the act. So if they had a grievance that predated the amendment to the act, that would still go forward, is what you're saying? I don't know if there was one that was pending at the time. I'm just saying hypothetically. Right. If one had been resolved, we wouldn't go back and undo it. Or if dues had been paid, we wouldn't have the union refund the dues. The amendment doesn't require any of that. It just says going forward these people are no longer in the union as of this date. And so you don't have an opinion as to whether or not if there were grievance pending prior to the amendment, whether or not that would go forward? You know, the Board didn't address that, so I'm leery to say, but I would think if it refers to things that happened when they were a union member, it probably would be allowed to go forward. I don't know what remedy could be given once they're no longer in the union, but, again, that's something that... Counsel, Mr. O'Hara has argued that Foster Wheeler can't be reconciled with what happened here. And Foster Wheeler, I believe, was filed as supplemental authority pursuant to this court's allowance of a motion. What's your response to his argument regarding Foster Wheeler? I do read Foster Wheeler. I did think it was interesting that they filed a 43-page opening brief and a 20-page reply brief did not mention it. Then after a briefing is completed, we get this 11-year-old case cited with no pinpoint citation and no analysis as to how it applies to this case. But based on what he said today at oral argument, it seems like he thinks that any time there's a contract in existence of any type, whether it be a contract between private parties, whether it be a collective bargaining agreement, that a statutory amendment cannot apply to that until the contract expires. And, of course, some contracts would not have an expiration date, so it's hard to kind of follow that in some circumstances. But here I think it's important to note that the parties don't contract over who is a public employee under the Act. That's something that the legislature decides. So even if, for example, even after the amendment, if the comptroller wanted to voluntarily include these PSAs in a collective bargaining unit, it could not do so. It would be illegal. They only have the authority that the General Assembly gives. So just as the General Assembly decided that at one point that the definition was broad enough that these people could be encompassed in collective bargaining, it later thought otherwise of that and has now said that these particular job titles will no longer be included in collective bargaining. And because people have no right in the continuance of a law, the General Assembly can do that at any point. And so that's our response to what he says about Foster Wheeler. Also in this respect, we cited in our brief a number of cases, including the Illinois Supreme Court's recent Hayashi case, the Consiglio case, and the Valerio case, which talk about a law that was passed that revoked medical licenses for physicians who had committed certain offenses, especially sexual offenses involving their patients. And in that case, the Illinois Supreme Court, the Illinois Appellate Court First District, and the Federal District Court all rejected the argument that this was a retroactive application because it said it doesn't reach back. It doesn't say that prior to the law being passed that the doctors were participating in the unlicensed practice of law, even though the convictions had occurred years before. And also they weren't made to disgorge the profits that they had earned prior to the amendment taking effect. So that's the same sort of analysis that we're saying here, that just as those doctors could no longer practice going forward once that law was passed, that these people are no longer in the union once that amendment was passed. And the comptroller initially thought that the language was so clear, it's one sentence that says, PSAs employed by the comptroller are no longer within the definition of public employee, that it didn't think it was necessary to go to the labor board to have them determine it, because it is just a clean issue of statutory construction. There's no fact-finding to be done, no need for a hearing. So what changed your mind? Once the union... I was going to ask, so why the unit clarification? Well, the union started fussing and made clear that it wasn't going to go along with that. So the comptroller said, well, then we'll go to the board and let the board decide. The comptroller's position was that, effective immediately, the people could no longer be in the union. And the union's position was, no, you have to wait 27 months until these CBAs expire, and only then can we be removed. So the parties were not seeing eye to eye at all, so the comptroller said, well, let's let the board decide. The board agreed with the comptroller that the legislature intended it to be immediate going forward. But it said that they were still required to file a unit clarification petition, because the board certifies both the inclusion and the exclusion of employees from collective bargaining units. So even though the board found that they were no longer public employees as of April 5th, it did not formally exclude them from the union until after ruling on the unit clarification petition, which was about a year later. So even though we talked about the contract was signed one day before the legislation was passed. Right, that's one of the interesting things about the statutory construction argument. They've never argued that this amendment was invalid or unconstitutional or anything. They're just saying that the legislature intended that it should not go into effect until these CBAs expired. But these CBAs didn't even exist when the House and the Senate passed this bill. So they were just entered the day before the governor signed the bill into law. So there was no way that the legislature could have known what the expiration of these collective bargaining agreements would be at that time. So these cases that I talk about with the doctor, with the doctors having their licenses revoked, we think that those are directly analogous. And we talked about those in our Applebee's brief. But they chose not to respond to them in their reply brief for whatever reason. So really here we can see that this is a substantive amendment and it can't be applied retroactively. So really it's just the parties disagreeing about what the definition of the word prospective is. We think prospective means going forward from the bill becoming law. And they think it means delaying it 27 months until the CBAs expire, which we think is more accurately described as prospective plus. And as Justice Steigman pointed out during Mr. O'Hara's presentation, the legislature knows how to include language saying that an amendment will not apply to a current CBA. And it did so specifically in Section 15B when the act was first enacted in the 1980s. At that time it said nothing in the act would disturb any current CBA. So it easily could have done that. So unless this court has any further questions, we would ask that you affirm. Seeing none, thank you. Thank you. Counsel, please. I'm going to, again, deviate a little bit, but I want to make a quote from the Landry case that was cited not only by Kaveny, but also in the Foster Wheeler case. The largest collection of cases in which we have applied the prescription against statutory retroactivity has involved new provisions involving contractual or property rights, matters in which predictability and stability are of prime importance. Now, he just said that the legislature couldn't possibly have known about this collective bargaining agreement. Well, that's just false. I would ask you to look at the statutory amendment. Comptroller's PSAs were treated a little differently than the rest of the titles that were taken out. There was no unit clarification that was required. There's no indication that the PSAs were supervisors or confidential employees or managers or professional employees. They were just taken out. And we alleged, and we're going to prove at arbitration, that the Comptroller's office put a rider on this legislation to take the PSAs out and that they signed the contract while at the same time assisting the legislature in passing that legislation, which is a breach of good faith and fair dealing, which is why I filed my petition to compel arbitration in the first place. Now, if my frustration has shown, I apologize to this court. Justice Turner, you indicated that I speak as if I speak ex cathedra, and I don't. But I will say this. I researched and I garnered my research and filed my petition prior to initiating this initial litigation. And you'll find from the very commencement of my petition in the circuit court that I cited every single case that I cited to you today. And I'm not naive, but Justice Steinman, I had trouble deciding how I was going to argue this case. I knew I was going to get upset. And I'll tell you what I was going to do. I've got to tell you what I was going to do. I was going to quote a young Jewish writer that wrote a line 50 years ago today, this year, named Bobby Zimmerman from Hibbing, Minnesota. The most oft-quoted line from a song cited in American jurisprudence. And it's, you don't need a weatherman to know which way the wind's blowing. I've lost every single aspect of this case, despite the fact that it was only one simple, straightforward, uneventful, and again, those are not my words, those are the Illinois Supreme Court, one issue to decide. And neither the circuit court, or the attorney general, or the comptroller, or the Illinois Labor Relations Board, has ever indicated why Commonwealth Edison, why Landgraf, why Kaveny, and why Foster Wheeler isn't applicable. Never have they indicated such. Indeed, in a footnote on page, I think, 14, footnote 4 in my reply brief, I cited four different cases from the Illinois Labor Relations Board itself, providing the very analysis that I am attempting to convey to you, and wholly ignored. Now, the ALJ ignored it because he didn't get it at all. When I was at the circuit court, I said, don't send this to the administrative body. An administrative law just doesn't know how to apply a purely legal issue to the effective date of a statute. It has nothing to do with the Illinois Labor Relations Act. In fact, it has to do with the effective date of a statute. And the Illinois Supreme Court issued three different decisions to make sure that it was unequivocal how to do it. There isn't any deviation for it. That's why the Illinois Supreme Court did it. Counsel, you are out of time. This court appreciates your zealous advocacy, and the advocacy of... Thank you. I apologize if I was out of order. You're fine.